UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MOHAMED EL-KARANCHAWY, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:09CV00442 ERW |
| AED ENTERPRISES, LLC, d/b/a DEWEY'S PIZZA, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant AED Enterprises, LLC's Motion for Summary Judgment [doc. #24].

**I. BACKGROUND[1]**

This litigation arises out of an employment dispute between Plaintiff Mohamed El-Karanchawy ("Plaintiff") and Defendant AED Enterprises, LLC, d/b/a Dewey's Pizza ("Defendant" or "Dewey's Pizza"), with Plaintiff claiming that Defendant terminated his employment because he exercised his rights under the Family Medical Leave Act ("FMLA") and because he filed a workers' compensation claim, in violation of his rights under the FMLA and the Missouri Workers' Compensation Act.

Plaintiff began working for Defendant sometime in April 2006 as a dishwasher, and by August 2007, he had moved into a full-time position as a cook at Defendant's location in University City, Missouri. At that location, Plaintiff's immediate supervisors were regional

---

[1]The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts, Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts, Plaintiff's Statement of Facts, and Defendant's Response to Plaintiff's Statement of Facts.

manager David Justice ("Justice"), general manager Zoe Nicholson ("Nicholson"), and kitchen manager Joddy Henderson ("Henderson"). While at work in March 2008, Plaintiff reported to Justice that he was experiencing stomach pains, and Justice filled out a "First Report of Injury" form and sent Plaintiff to a local occupational medicine clinic. Plaintiff received treatment there on March 6 and March 13, 2008, and on that latter day he was released to return to work without any restrictions. Then, in September 2008, Plaintiff's physician diagnosed him with a hernia and recommended surgery, which was ultimately performed on September 15, 2008. Plaintiff informed Defendant, prior to that time, that he needed to have surgery and would have to miss some amount of work. On October 20, 2008, Plaintiff filed a workers' compensation claim related to the March 2008 injury and the subsequent September 2008 surgery, which was sent to Defendant's corporate office in Cincinnati, Ohio. The next day, on October 21, 2008, Defendant received a "return to work" note from Plaintiff's physician, allowing him to return on November 11, 2008 on light duty, with a ten pound lifting restriction, and without any restrictions as of December 11, 2008.

Plaintiff's employment was officially terminated in mid-December 2008, and the issue at the heart of this Motion is whether Plaintiff was fired because he failed to appear for work on November 11th or any date thereafter, or if Plaintiff did appear on November 11th and was told that there was no work available for him. The Court addresses this factual dispute – that is, whether the dispute amounts to a genuine issue of material fact in the context of Plaintiff's claims – below in its analysis of the merits of Defendant's Motion.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof on a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavits and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002); Fed. R. Civ. P. 56(e)(1). The non-moving party does not need to produce "evidence in a form that would be admissible at trial in order to avoid summary judgment"; "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Celotex*, 477 U.S. at 324.

To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. DISCUSSION

Defendant contends that it is entitled to summary judgment (1) on Plaintiff's FMLA interference claim, because the undisputed facts establish that Defendant restored him to his position as cook following his surgery and only terminated his employment after he repeatedly failed to appear for work; and (2) on Plaintiff's retaliation claim, because it is undisputed that those individuals responsible for terminating his employment were unaware that he had filed a workers' compensation claim until the filing of this lawsuit. Plaintiff asserts that summary judgment is improper because there are genuine issues of material fact as to the reason why Defendant discharged him from his employment.

### A. FMLA Interference Claim

An interference claim under the FMLA is one in which the employee claims that his employer "denied or interfered with his substantive rights" under the Act. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (internal quotations and citations omitted); *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Family and Medical Leave Act]."). "Under the FMLA, a covered employee may have up to twelve weeks of leave during

4

any twelve month period if the employee is suffering from a 'serious health condition' which makes him 'unable to perform the functions of [his] position.'" *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.114(a)(2)(i)) (alteration in original). An employee who establishes that he is entitled to FMLA leave and complies with certain procedural requirements, including notice to his employer of the need for leave and the ability to return to work, is entitled to return to work in his prior position or an equivalent one. *See id.* at 991; 29 U.S.C. § 2614(a)(1).

That said, this right to restoration is not unlimited, and "[a]s long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to [his] position, the employer will be justified to interfere with an employee's FMLA leave rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005); *see also* 29 U.S.C. § 2614(a)(3)(B); *Woods*, 409 F.3d at 991 (an employer is not required to a restore an employee to his position if he was "subject to discharge for reasons other than [his request] for FMLA leave"); *Phillips*, 547 F.3d at 911 ("The employer is not liable for this interference . . . where an employee's reason for dismissal is insufficiently related to FMLA leave.") (internal alterations, quotations, and citation omitted). "The burden is on the employer to prove the reason for termination was unrelated to FMLA." *Phillips*, 547 F.3d at 911. (internal citation omitted).

Defendant has come forward with the following evidence indicating that its termination of Plaintiff's employment was unrelated to his exercise of FMLA rights.[2] It is undisputed that

---

[2] Defendant's Motion is supported by a fair amount of documentary evidence raising hearsay concerns, but Plaintiff has not objected to the introduction of any of these documents on hearsay grounds. In any event, it appears that all of these documents would either be admissible under the business records exception, *see* Fed. R. Evid. 803(6), or are not offered for the truth of the matter asserted.

5

Plaintiff notified Defendant that he would be taking FMLA leave due to hernia surgery on September 15, 2008, and his supervisors Justice, Nicholson, and Henderson all state that they did not make any statements indicating that Plaintiff would not be allowed to return to work once he was medically able. Plaintiff testified in his deposition that he had been provided with and was aware of the Attendance Policy at Dewey's, which states that a "single unexcused absence or tardiness [could] result in termination based on the severity of the problem." Henderson and Justice state that upon receiving a note from Plaintiff's physician on October 21, 2008, indicating that he would be ready to return on light duty as of November 11, 2008, Plaintiff was placed back on the work schedule starting on that date. Dewey's work schedules for the weeks of November 10th and November 17th both indicate that Plaintiff was scheduled to work, and Nicholson and Justice confirm that in their testimony. Henderson also states that he called Plaintiff some amount of time before his scheduled return, and that Plaintiff agreed that he would come to work at 5:00 PM on November 11th, as scheduled.

Justice, Nicholson, and Henderson – as well as Clement Barrios, who was a manager-in-training at the time – all claim that they were present at Dewey's University City location on November 11th, and that Plaintiff neither appeared nor called in to give a reason for not appearing, and that he never appeared for work on any subsequent date. Henderson and Nicholson state that they called Plaintiff multiple times and left multiple messages on his answering machine, but he did not respond. Dewey's "Front of the House log book" for November 11th contains, along with many other remarks, a notation stating "Moe [sic] didn't come in for his kitchen shift," and Barrios confirmed that he made that notation, referring to Plaintiff. Defendant also offers a letter from Defendant's corporate human resources department, informing Plaintiff that he had missed scheduled work shifts on November 11th and 12th, that

6

Plaintiff was scheduled to work again on November 13th, and that Defendant's employees had attempted to contact him by phone but received no response. The letter is dated November 13, 2008 and was sent by certified mail, and Plaintiff admits that it was sent to his correct address, but the return receipt indicates that it was returned to Defendant as unclaimed and undeliverable.

Plaintiff's telephone records over this time period generally support Defendant's version of events. They indicate that Plaintiff received a call from Henderson's cell phone at 5:13 PM on November 11th, shortly after he was scheduled to work, and two more calls from Dewey's Pizza on that date at 5:23 PM and 9:27 PM. The records also show that Plaintiff received calls from Dewey's Pizza on November 12th at 10:17 AM and on November 13th at 7:46 PM. Plaintiff argues that this is considerably fewer than the "multiple" calls Defendant alleges its managers made on those days, but as Defendant notes, it is unclear whether the records display those calls that were abandoned before Plaintiff or his answering machine picked up the call.

Justice states that on December 15, 2008, after more than a month of receiving no contact from Plaintiff, he made the decision to terminate Plaintiff's employment for excessive absenteeism and directed the managers on duty at Dewey's University City location, Natalie Edwards ("Edwards") and Jason Lavoise ("Lavoise"), to execute the appropriate paperwork. Defendant has attached that document to its Memorandum in Support, and it is consistent with Justice's assertions.

Defendant's evidence bears out its claim that there is no genuine issue of material fact as to whether Plaintiff's termination was related to his decision to take FMLA leave, and the burden therefore shifts to Plaintiff to come forward with specific facts demonstrating that such issues of fact exist – that is, that there is more than just "some metaphysical doubt as to the material facts."

7

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Plaintiff has failed to carry this burden because although his evidence might cast doubt on whether he was fired for failing to appear for work, it in no way suggests that the reason he was terminated was related to his use of FMLA leave. *See Throneberry*, 403 F.3d at 978. Plaintiff represents that he did, in fact, report for work on November 11th, and that Henderson and another manager, Tom Poe, both told him that Justice did not want him to return to work until his workers' compensation claim was resolved.[3] These allegations, if true, would only indicate that a dispute over Plaintiffs' workers' compensation rights led to Plaintiff's termination; they do not suggest that Defendant refused to restore him to his pre-leave position because he took FMLA leave.

The Court acknowledges that the Eighth Circuit's statement in *Throneberry* – that an employer is justified in not restoring an employee to a prior position if it can show "a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights," for not doing so, 403 F.3d at 978 – is not particularly helpful where, as here, there is some evidence that the reason was *not* lawful, even if it *was* unrelated to the exercise of FMLA rights. The *Throneberry* court was clear, however, that an FMLA interference claim requires some nexus between the use of FMLA leave and the employer's interference. *See id.* at 977-80. If the Court were to conclude that an FMLA interference claim lies where the employee is discharged for exercising state-law workers' compensation rights, then the FMLA would, in effect, become a tool for enforcing those state

---

[3] These alleged statements from Henderson and Poe are double hearsay, but both levels of the statements, by management-level employees concerning matters within the scope of their employment, made during that employment, are "not hearsay" as admissions of a party-opponent's agent or servant. *See* Fed. R. Evid. 801(d)(2)(D).

8

laws. The Court does not believe, however, that the FMLA is intended to enforce rights that exist outside of the Act. *Cf.* 29 C.F.R. 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA. The employer's obligations, may however, be governed by the Americans with Disabilities Act, . . . state leave laws, or workers' compensation laws."). If an employee's termination is, in fact, unlawful for a reason unconnected to the FMLA, then the employee will have a corresponding remedy for that unlawful action outside of the provisions of the FMLA, and providing a remedy for that action through the FMLA would be entirely redundant. As such, the Court finds that *Throneberry*'s reference to a "lawful" reason for discharge refers to lawfulness within the provisions of the FMLA, and that so long as the reason for discharge is unconnected to the FMLA, the employee does not have a viable FMLA interference claim.

Plaintiff has also presented some evidence indicating that his termination may have been related to his ability to perform his cook duties after hernia surgery. Here, Plaintiff refers to testimony from Evan Veremakis ("Veremakis"), another employee at Defendant's University City location, in which Veremakis relates that he was a part of conversations with managers Henderson and Edwards in which they expressed some concern that Plaintiff would be unable to perform his job duties due to the after-effects of his surgery. Even assuming that one could infer from this evidence that Defendant ultimately decided to discharge Plaintiff due to concerns about his future performance, the FMLA does not prohibit employers from refusing to reinstate employees who are unable to perform their job duties. *See Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (employer was not required to reinstate

employee following expiration of her FMLA leave where physician-imposed work restrictions precluded her from performing job duties); *see also* 29 C.F.R. § 825.216(c).

The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim. Defendant has offered evidence consistently indicating that its decision not to restore Plaintiff to his prior position was based on his failure to appear for work, and Plaintiff failed to respond to that showing with any evidence that Defendant's decision was connected to his exercise of FMLA rights. As such, there is no genuine issue of material fact as to one necessary element of Plaintiff's claim, and Defendant is entitled to judgment as a matter of law.

### B. Retaliatory Discharge Claim

Mo. Rev. Stat. § 287.780, part of the Missouri Workers' Compensation Act, directs that "[n]o employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under [the Act]" and provides that "[a]ny employee who has been discharged or discriminated against [for doing so] shall have a civil action for damages against his employer." A claim under § 287.780 for retaliatory discharge has four elements: "(1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by Chapter 287, (3) employer's discharge of or discrimination against plaintiff; and (4) an exclusive causal relationship between plaintiff's action and defendant's actions." *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. 1998) (en banc).

The only element at issue in this case is the fourth – whether the only reason Defendant fired Plaintiff or did not permit him to return to work on November 11, 2008 was because he filed a workers' compensation claim – and Defendant's evidence on this point, as discussed above, indicates that Plaintiff's failure to appear for work on November 11th and thereafter was the sole

10

reason for his termination. Justice, Nicholson, and Henderson all consistently state that Plaintiff was on the work schedule for the weeks of November 10th and 17th, that he did not appear for work on any of the scheduled dates, and that he did not respond to any of their calls to determine if he intended to continue his employment with Defendant. These claims are supported by Dewey's Pizza's work schedules for the relevant weeks and a notation on the daily log for November 11th indicating that Plaintiff did not appear for work. Justice, Nicholson, and Henderson also assert that they did not know that Plaintiff had filed a workers' compensation claim until they were notified about this lawsuit. These facts, if undisputed, would establish that there is no genuine issue of fact as to whether Plaintiff's filing of the workers' compensation claim was the only reason Defendant refused to allow him to continue working at Dewey's Pizza; the burden therefore shifts to Plaintiff to come forward with sufficient evidence on this element that a jury could reasonably return a verdict in his favor. *See Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008).

In his deposition, Plaintiff testified that his workers' compensation attorney advised him to call Dewey's Pizza around ten days before his doctors' note permitted him to return to work, and that when he called Henderson, Henderson informed him that Justice did not want him to return to work. This is at least arguably supported by Plaintiff's telephone records, which show a two-minute call from Plaintiff to Henderson's cell phone on November 5th. Plaintiff further claims that his attorney instructed him to go ahead and appear for work on November 11th and request light duty, and that when he did so, he encountered Henderson behind the restaurant taking a break and smoking a cigarette, at which point Henderson told him that Justice would not permit

11

Plaintiff to work until his workers' compensation claim was resolved. Plaintiff asserts that he spoke to another manager during that visit, Tom Poe, who told him the same thing.[4]

Plaintiff's evidence does not rest solely on his own statements, however; Evan Veremakis's deposition testimony lends some further support to Plaintiff's version of events. In denying that he had a conversation with Plaintiff on November 11th behind Dewey's University City location, Henderson testified that he did not smoke during 2008, that he did not take breaks at work, and that he "never" had any occasion to sit out back behind the restaurant. In contrast, Veremakis states that Henderson definitely did smoke cigarettes during that time period, and that he smoked "out the back door, behind the restaurant," lending some credence to Plaintiff's narrative. Veremakis also claims that while Plaintiff was absent from work following his surgery, "everybody discussed the fact that [Plaintiff] was gone because of this injury and the claim that . . . Dewey's . . . were [sic] responsible for the surgery or whatever, because it occurred from work or whatever," and his follow-up responses make clear that Veremakis had such discussions with Henderson. Although the precise import of Veremakis's statement is unclear, it does at least arguably support the inference that Henderson was aware of Plaintiff's workers' compensation claim, contrary to his sworn testimony.

Plaintiff's testimony, corroborated in part by his telephone records and Veremakis's testimony, is sufficient to demonstrate that the grounds for Plaintiff's termination is a genuine issue of material fact, precluding summary judgment in favor of Defendant on this retaliatory discharge claim under Mo. Rev. Stat. § 287.780. Were the Court to conclude that summary

---

[4] These alleged statements from Henderson and Poe are double hearsay, but both levels of the statements, by management-level employees concerning matters within the scope of their employment, made during that employment, are "not hearsay" as admissions of a party-opponent's agent or servant. *See* Fed. R. Evid. 801(d)(2)(D).

judgment is proper, it would, in effect, be concluding that Defendant is entitled to judgment because its version of events is more plausible and is supported by a greater quantity of evidence. Although Defendant presented persuasive evidence that Plaintiff's failure to appear for work led to his termination, Plaintiff responded with his own version of events, supported by affirmative evidence and specific facts, indicating that Defendant's actions concerning his employment were solely motivated by Plaintiff's decision to file a workers' compensation claim. As such, crediting Plaintiff's version of events does not require the Court to "accept unreasonable inferences or sheer speculation as fact," and the Court therefore concludes that Plaintiff has presented sufficient evidence to survive summary judgment on this claim. *See Reed v. City of St. Charles, Missouri*, 561 F.3d 788, 791 (8th Cir. 2009); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

### C. Conclusion

Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim, but not on his state-law retaliatory discharge claim. Summary judgment on the FMLA claim is proper because there is no evidence in the record suggesting that Defendant's decision to terminate Plaintiff's employment was connected to Plaintiff's exercise of FMLA rights. Defendant is not entitled to judgment as a matter of law on Plaintiff's retaliatory discharge claim under the Missouri Workers' Compensation Act, however, as there is a genuine issue of material fact as to whether Defendant discharged Plaintiff because he filed a workers' compensation claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #24] is **GRANTED, in part** and **DENIED, in part**.  Defendant's Motion is granted with respect to Plaintiff's claim under the Family Medical Leave Act, and denied with respect to his retaliatory discharge claim under Mo. Rev. Stat. § 287.780.

Dated this 29th Day of July, 2010.

                                                      E. RICHARD WEBBER
                                                    UNITED STATES DISTRICT JUDGE